**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellant,*

             v.

DUNCAN WILLIAM EDWARDS,
             *Defendant-Appellee.*

No. 08-30055

D.C. No.
CR-03-00058-DWM
District of Montana,
Missoula

UNITED STATES OF AMERICA,
             *Plaintiff-Appellant,*

             v.

DUNCAN WILLIAM EDWARDS,
             *Defendant-Appellee.*

No. 08-30056

D.C. No.
CR-04-00009-DWM
District of Montana,
Missoula

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

             v.

DUNCAN WILLIAM EDWARDS,
             *Defendant-Appellant.*

No. 08-30059
D.C. Nos.
9:04-cr-00009-
DWM-1
9:03-cr-00058-
DWM-1
District of Montana,
Missoula

ORDER

Filed September 20, 2010

Order;
Dissent by Judge Gould

14399

Before: Harry Pregerson, Carlos T. Bea and
Milan D. Smith, Jr., Circuit Judges.

A judge of this court *sua sponte* called for this case to be reheard en banc. A vote was taken, and a majority of the active judges of the court did not vote for a rehearing en banc. Fed. R. App. P. 35(f). The call for this case to be reheard en banc is DENIED.

---

GOULD, Circuit Judge, with whom BYBEE, CALLAHAN, and BEA, Circuit Judges, join, dissenting from the denial of rehearing en banc:

I respectfully dissent from the denial of rehearing en banc in this case.

In his cogent dissent from the majority decision of our three-judge panel, Judge Bea persuasively catalogs the laundry list of analytical errors committed by the district court at sentencing. *See United States v. Edwards*, 595 F.3d 1004, 1018-25 (9th Cir. 2010) (Bea, J., dissenting). I will not restate all of those errors here. Instead, I write to emphasize a larger and recurrent problem: our court's practice of uncritically affirming unreasonably lenient sentences for white-collar criminals renders the Sentencing Guidelines a nullity, makes us an outlier among the circuit courts, and impairs our ability effectively to review sentences for substantive reasonableness. Our "rubber-stamp" approach to reasonableness review permits district courts to abuse their sentencing discretion by paying lip service to appropriate sentencing considerations while paying inadequate heed to the substance of those considerations. Hence we can end up with people like Edwards who engage in fraud and other criminal activities intended to cause extremely large monetary damages, yet who spend token and inadequate time, or even not one day, in jail.

Although we owe deference in the area of sentencing to a district court's "superior position to find the relevant facts and judge their import," *Edwards*, 595 F.3d at 1016 (internal quotation marks omitted), in the area of white-collar crime we should be circumspect to draw careful boundaries around that deference. Because of the nature of their crimes, white-collar offenders are uniquely positioned to elicit empathy from a sentencing court. *See United States v. Ruff*, 535 F.3d 999, 1007 (9th Cir. 2008) (Gould, J., dissenting) ("[D]istrict courts sentencing white collar criminals can more often identify with the criminal . . . . But, socioeconomic comfort with a criminal convict is not a sufficient reason to show such extreme leniency . . . ."); Kenneth Mann et al., *Sentencing the White-Collar Offender*, 17 Am. Crim. L. Rev. 479, 500 (1980) (concluding from a survey of federal judges that they evinced particular "understanding" and "sympathy" "for the person whose position in society may be very much like their own," and that "factors intimately related to the defendant's social status do receive weight in the judges' thinking" about sentencing). And while judges take seriously violent crime and are forced by congressional mandatory minimums to take seriously drug crimes, there is latent risk in the case of white-collar sentencing that an "it's only money" rationale will result in undue leniency for serious offenses. I have no doubt that Edwards made a persuasive presentation to the district court that he was an unhealthy, aging retiree repentant of past frauds. Such cases are precisely when we should most rigorously review a sentence's reasonableness to ensure that the justifications relied on at sentencing are supported by objective evidence in the record. *See* Michael M. O'Hear, *Appellate Review of Sentences: Reconsidering Deference*, 51 Wm. & Mary L. Rev. 2123, 2141-49 (2010) (criticizing appellate deference to trial judge assessment of demeanor evidence at sentencing on the basis of the "emerging consensus in the legal and social science literature that people generally do a poor job in evaluating demeanor evidence," and concluding that a defendant's demeanor "seems about as likely to lead the trial judge astray as to facilitate good decision making"). We know

that often criminal defendants who commit other types of crimes will serve some hard time. White-collar offenders like Edwards should not escape the same punishment simply because they are better-positioned to make a sympathetic presentation to the district judge.

This case is just the latest example of our circuit's pattern of approving unreasonably lenient sentences for serious white-collar offenses. *See United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (per curiam) (affirming sentence of probation and no imprisonment where the Sentencing Guidelines recommended 41 to 51 months' incarceration); *Ruff*, 535 F.3d at 1004 (affirming sentence of no imprisonment where the Sentencing Guidelines recommended 30 to 37 months' incarceration). That pattern is evolving into a universal rule in this circuit that no incarceration is always an appropriate exercise of discretion in white-collar criminal cases. *See, e.g.*, *Edwards*, 595 F.3d at 1016, 1018 (citing *Whitehead* and *Ruff*, and quoting *Ruff* for the proposition that "it is the district court's reasoned decision itself, not the specific reasons that are cited, that triggers our duty to defer" (brackets omitted)). Such a rule is an abdication of our responsibility to review sentencing decisions for substantive reasonableness under an abuse of discretion standard. "Our substantive review of sentences may be limited after *Gall*, but being deferential does not mean turning a blind eye to an injustice." *Whitehead*, 532 F.3d at 994 (Bybee, J., dissenting); *United States v. Davis*, 537 F.3d 611, 615 (6th Cir. 2008) ("Even after *Gall*, appellate courts still have some role to play, even if it is a modest one, in ensuring that there is some consistency between and among district-court sentencing practices.").

This practice also renders us an outlier when contrasted with other circuits' substantive scrutiny of lenient white-collar sentences. *See, e.g.*, *United States v. Vrdolyak*, 593 F.3d 676, 678, 681-84 (7th Cir. 2010) (reversing as an abuse of discretion a sentence of five years' probation, community service,

and a $50,000 fine, where the defendant had intended a loss by fraud of between $1 million and $2.5 million, and the Sentencing Guidelines recommended a sentence of 33 to 41 months' imprisonment); *United States v. Engle*, 592 F.3d 495, 497-98, 504-05 (4th Cir. 2010) (vacating as substantively unreasonable a sentence of four years' probation including eighteen months' confinement in a community corrections center, where the defendant had evaded $600,000 in taxes and the Sentencing Guidelines recommended a sentence of 27 to 33 months' imprisonment); *United States v. Livesay*, 587 F.3d 1274, 1277-79 (11th Cir. 2009) (vacating as substantively unreasonable a sentence of five years' probation where the defendant orchestrated a massive corporate accounting fraud and the Sentencing Guidelines recommended 78 to 97 months' imprisonment); *Davis*, 537 F.3d at 611 (reversing as substantively unreasonable a sentence of one day in prison where the defendant had been convicted of bank fraud causing $1.6 million in losses and the Sentencing Guidelines recommended 30 to 37 months' imprisonment); *United States v. Omole*, 523 F.3d 691 (7th Cir. 2008) (reversing a 12 month custodial sentence for a defendant convicted of wire fraud when the Sentencing Guidelines range was 87 to 102 months' imprisonment, and the sentencing judge's explanation did not support a sentence so far below the range); *United States v. Hunt*, 521 F.3d 636 (6th Cir. 2008) (reversing a probationary sentence for health care fraud where the Sentencing Guidelines recommended 27 to 33 months' imprisonment); *United States v. Cutler*, 520 F.3d 136 (2d Cir. 2008) (reversing as substantively unreasonable two sentences for fraud, one of probation and one of a year and a day); *United States v. Crisp*, 454 F.3d 1285, 1291 (11th Cir. 2006) (reversing as substantively unreasonable a sentence of probation and five hours in custody where the defendant defrauded a bank of $500,000 and the Sentencing Guidelines recommended 24 to 30 months' imprisonment); *United States v. Givens*, 443 F.3d 642 (8th Cir. 2006) (reversing as substantively unreasonable a sentence of five years' supervised release including twelve

months of house arrest, eighty hours of community service, and $1.2 million in restitution, where the defendant committed bank fraud and the Sentencing Guidelines recommended 24 to 30 months' imprisonment).

Statistics illustrate my point. In fiscal year 2009, the median sentence of imprisonment in the Ninth Circuit for fraud was 6 months.[1] Compare that to the national median of 18 months. Or contrast it with the median sentence of imprisonment in the Ninth Circuit during the same time period for immigration offenses (21 months); for drug trafficking offenses (40 months); and for firearms offenses (48 months). I'm sure there are good explanations for some of these disparities, but we should be concerned about the substantial divergence between our treatment of white-collar criminals and other types of criminals, and between white-collar criminal sentences in our circuit and in other circuits.

Unless and until an en banc opinion posts an outer limit on sentencing discretion, we can expect to see more non-imprisonment sentences for serious offenses committed by repeat white-collar offenders. As a circuit we are not taking seriously the recommendations of the Sentencing Guidelines Commission in white-collar criminal matters. It doesn't take a crystal ball to see that those occasional dishonest persons in the business community may make a slide-rule calculation that they can steal hundreds of thousands of dollars, maybe even millions, because if caught they see a good chance that they can walk away with expressed contrition and probation. That is the result the Sentencing Guidelines have long worked to prevent. *See* U.S.S.G. Ch. 1, Pt. A.4(d) (2009) ("Under pre-guidelines sentencing practice, courts sentenced to probation an inappropriately high percentage of offenders guilty of cer-

---

[1]All statistics are drawn from data in Tables 5-7 in the report of the United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2009, Ninth Circuit, *available at* http://www.ussc.gov/JUDPACK/2009/9c09.pdf.

tain economic crimes, such as theft, tax evasion, antitrust offenses, insider trading, fraud, and embezzlement . . . ."); Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L. Rev. 721, 724-25 (2005) ("By using short but certain terms of imprisonment to deter and punish, the Commission hoped to reduce greatly the percentage of [white collar] offenders receiving probation.").

Edwards fraudulently obtained more than $3 million and got a break at sentencing. While on probation, he did it again. And again. We owe it to Edwards's victims, and to the public, to make sure that this time he gets the message. And we can only hope that the public does not get our court's current message of leniency for white-collar criminals but frequent harsh punishment for the poor and powerless. We need not contrast Edwards's case with Victor Hugo's literary classic of excessive punishment, *Les Miserables*, in which a convict gets nineteen years for stealing a loaf of bread, to see that *Edwards* presents a case of excessive leniency. *Cf. People v. Taylor*, 71 Cal. App. 4th 693, 699, 703 (1999) (Johnson, J., dissenting) (comparing the case of a homeless man sentenced to 25 years to life under California's three-strikes law for stealing food from a church to *Les Miserables*). I respectfully dissent because as a circuit we should have reviewed this case en banc to fashion some standard for when a sentence resulting in no time in prison is unreasonable for white-collar crime.